Good afternoon, Your Honors, and may it please the Court, Daniel Collins of Mungertals & Olson on behalf of Appellant Mattel, Inc. Both of the bases of jurisdiction asserted by the defendants here, both diversity and federal question jurisdiction, fail, and therefore the case should be remanded to the Los Angeles Superior Court. I'd like to address the diversity jurisdiction first. There are two alternative problems, either of which is sufficient to warrant a rejection of the diversity jurisdiction. First is the fact that MGA, as the complaint is now understood, is an indispensable party to the claims. Now, the district court did not actually dispute that proposition. Instead, what the court concluded is that because the interest of MGA did not appear on the face of the complaint, that therefore it could not be deemed to be an indispensable party. The defendants do not defend that reasoning, which is directly contrary to the Decatur case, where the indispensability was only discovered after the pleadings, and you obviously have to assess it in light of the understanding of the claims. The district court didn't go ahead and do the four-factor analysis, and therefore this Court reviews that de novo. That's, in fact, what the Court did in Decatur, that it noted that it could remand the matter but instead went and analyzed the factors itself. Two of those factors are not in dispute. One is that nothing was offered in order to lessen the degree of prejudice, and then the fact that there is an alternative forum where everyone can be joined and these issues can be resolved, that factor, as the Decatur ---- Kagan. First, they have to be a necessary party under A before we get to B. Roberts. There's no dispute that they were a necessary party once it's understood that rights to brats are an issue. That was the issue in dispute, but it's always been, I think, agreed by all parties that at least they are a necessary party once rights to brats are an issue. The question that is indispensability, and you go through if ---- How do rights to brats become an issue except through copyright? They don't come in through copyright because the only issue as to which Federal jurisdiction was raised and is preserved, which is the conversion claim, is pleaded as an ownership claim, and the law is very clear in this circuit and elsewhere that an issue of who owns a copyright is not an issue that is governed by Federal law, it is governed by State law, and the conversion claim, which is the ---- I thought, well, we're kind of skipping you away from that. We're skipping you around, but I'd like to pursue that for a minute. As I understand it, the State tort law, you can have a conversion of tangible property, but how do you have a conversion of an idea? Well, that was one issue that was raised. Of course, that issue wouldn't help the defendants because if there's only a conversion of an idea, if it's found that State law conversion would only reach actual physical property, then, of course, this isn't going to be a copyright claim. It would mean that the conversion claim was the wrong claim to have asserted the Federal  Well, why? Will you explain why it isn't the wrong claim? Well, I don't think it's the right claim to have asserted Federal question jurisdiction, but even ---- No, but if you want this in the State court, what's your valid State claim? We have conceded, well, we have a number of claims that all relate to his disloyalty.  But on the conversion claim, what has he converted that you wouldn't properly bring a tort action for in the State court? We don't know the full extent of what he can No, but you must know something to have brought the claim. We know What did he actually convert? We know that he signed a contract with MGA before he left Mattel's employment. He purported to assign to them intellectual rights and property. But is that a tort of conversion under California law? That can be, under California law, rights to intangible property can be converted. If I'm wrong You have any case authority on that? This issue has not been raised or disputed between I mean, to look at the by-bonds in California law, you can't have a conversion action for intangibles. But if that's true, if Your Honor's premise is true, that would just mean that it has to be remanded on that ground. It means that the conversion claim Your other point, then, with regard, because in some ways, although I've shifted on this, I now think that the more straightforward issue is the Federal question jurisdiction. The allegation of conversion is that they converted by this agreement, ideas, concepts, rights, designs, proprietary information, and other intellectual property, intangible property. And I do have judgment in this problem about that. Such services of property were provided by Bryan to others, including defendants, and used by them. Now, the used by them seems to me, first of all, necessary or otherwise there isn't going to be any damages available, and B, to be a copyright claim. It isn't necessarily a copyright claim. I think you need Not just an ownership claim is what I'm saying. Well, the ownership, the mere fact that you assert that there were damages and that some relief is necessary as a result of the ownership But it's a used claim. So as I understand what they're saying, what you're saying here is he worked for a month for them when he was supposed to be working for us. He produced something during that time period. They, by virtue of the agreement, became owners of it or thought they were. But really, we were. And so when they were using it, they were using something, i.e. our intellectual property rights that belong to us. That's a copyright claim. And as I understand our case law, if you have both in a cause of action, both an ownership claim and an infringement claim, then there is Federal jurisdiction. But the – it has to be that it is ownership and copying. And I don't think and I don't mean to sound like I'm parsing words, but there are uses other than copying. And he took Well, but don't you judge a complaint by what can be in it rather than – ordinarily a complaint is judged by anything that could be encompassed in it. It certainly could be encompassed in this, the allegation that he used it by producing the Bratz doll. No. I think it's quite the opposite because we're talking about complete preemption as a narrow exception to the face of the complaint rule for Federal questions. And I think the Caterpillar v. Williams case is critical here because in Caterpillar, the defendant in removing the case showed that, look, on the facts as you've alleged them, you have a Federal claim. You're governed by this collective bargaining agreement. You have rights under it. It wasn't alleged in there. I mean, I know Caterpillar well. It was not – there was no allegation. The allegations were based on an individual contract. And the fact that there was also a collective bargaining agreement outside the agreement wandering around in the world was really not the problem of the person who completed the agreement. Here you have alleged use of the intellectual property. And frankly, I don't know what else it could mean other than did something with it that they weren't supposed to do. Well, his assignment of it to MGA, and Bryant is the defendant in this claim, his assignment of it and receiving consideration for that is a use. That is not in and of itself a copying. This complaint does not take the further step in the conversion claim of asserting. It's not very useful because if this is sent back, I mean, clearly that that is what was meant. And once the case goes forward, it's going to be clear that's what was meant and it's going to be removed again. Not necessarily. I think that the Briarpatch case, which is one of the complete preemption cases they rely upon, illustrates this. In Briarpatch, the court noted that there was a first case that resolved the ownership issue against the disloyal partner. And there was a judgment against the disloyal partner. There was a monetary recovery. All of that stayed in state court. Then there was a second action. I understand that, but that's why I'm focusing on the words and use. But I think the Briarpatch fursuit, the one that stayed in state court, is a similar use when you have rights that you have taken. And it's not. I want to correct one thing. It's not just the month. It's that his contract said that anything that you create during this time period, there's a contractual right in Mattel. So it's not just limited to the one month of overlap. It would be that if he developed this during the earlier time period. So there's a larger time frame that's at issue. But his assigning that over is certainly a use of it to his economic value, to be sure. And because. That's separately covered. Such services and property were provided by Brian to others. So the assignment's covered separately, including defendants and used by them. Well, he certainly is getting a revenue stream from that. It doesn't necessarily. And again, because we're in a complete preemption context, I don't think we read the complaint liberally to read anything that might lead to federal jurisdiction. It has to be quite the opposite. We are masters of the complaint. And if we've chosen not to assert the federal claim, but to resolve the ownership issue first and then decide what, if any additional claims to proceed with, that is a choice we're entitled to make. Can you enlighten the court at all? As to why you want to be in state court. The it belongs in state court because it is primarily a contract ownership issue. Tell us the real reason. Well, we started very we started this suit very cautiously. We knew he was disloyal in this one respect. We want to see how far it goes. We have any idea there was a copyright involved. Certainly, we believe his disloyalty can extend into that area. That's now quite in dispute between the parties at this point. But that I think the appropriate caution was to stay with the claims that we started with. Those claims belong in state court. At the time we're prepared to assert the further claims, then that that's something we can do at that time. Now, there's your opponents are maintaining, and to some degree, the district court, that the complaint also covers this contention that he basically took somebody else's idea. The two tones or tone, tune, tune, tune, whatever it's called, while he was working there, is your understanding that the conversion claim can be read to cover that or that it deals only with the ownership of what he himself intended? It's cast solely and you can read the language on excerpts of records 43 and 44. It's cast solely in terms of ownership. They have raised this issue that on the facts there has been inquiry into whether or not he may have copied a project. But as I pointed out in the reply brief, that, and here I think it, we're, we're really falling within the Caterpillar v. Williams case. You haven't chosen to sue it. We haven't chosen to sue on that theory, but it certainly is relevant to dating the time period of when he might have created this, which is relevant to the contractual ownership claim. The other thing I would point out in terms of the copyright preemption analysis is the courts have been very clear on most of these complete preemption cases that they have relied upon. That if there's the extra element of contract or there's the extra element of breach of fiduciary duty or disloyalty, that that takes it outside. Then the remedies are not equivalent. And that I think is exactly the conversion claim. Just to go back one once more to Judge Noonan's question, we have a footnote in our reply brief where we address this issue of the doubt about whether conversion can extend to rights in intellectual property of this sort. And we indicated that to the extent that they don't, that just means it has to be remanded for that reason, because they then picked only this claim to assert federal question and it would fail for that reason. Well, it doesn't fail as a federal question, it just means for a different reason. Exactly. If we were convinced by your argument on federal question, then we'd move to diversity, I guess. And what, why, in your view, is MDA indispensable? They're indispensable because if you look at the two factors of the four that they, the only two that they raise a dispute over, it's clear that those favor a finding of indispensability. And that is whether or not there is a substantial possibility of prejudice. And there clearly is here. If you are the assignee of rights and the upstream holder who gave you those rights is found not to, in fact, have had them. To say that that's prejudicial is something of an understatement. Of course, that judgment wouldn't mind you if you weren't in the. It would not bind NGA directly, but the inquiry into prejudice does not look at the de jure consequences. It looks at the practical consequences. That's in the commentary to Rule 19. And certainly as a practical consequence, that is going to threaten and imperil their interests. That's why they chose to come into this case. It seems to me every time you argue that, you invite us to think copyright. That's how they'd be prejudiced. The more you show they're indispensable, the more you show this is a copyright case. No, because again, the ownership issue alone is sufficient to show prejudice to them. If they are the downstream owner, the assignee, and the ownership issue is governed by state law, there's no complete preemption there. What could the damages, relief, if you're looking for more than injunctive relief, and I gather you are, if you were just looking for a declaration of ownership. I understand how this could be about nothing but ownership. It's the Scholastic Enterprises case where they absolutely said we are not going to use this thing in the meanwhile. All right. But here, in order to have any compensation, it's going to have to get into what happened to that, to this intellectual property right. Otherwise, what is your damages going to be? In Scholastic Enterprises, the plaintiff affirmatively asserted the copyright claim. And so there, you were, the court had to look for any possibility that a copyright claim could be asserted. Here, the converse is true. I'm asking you, what could the damages be if they weren't for infringement of copyright? Certainly, he received consideration for the assignment with his contract. And that value alone, any measure of damages is, the fact that the damages are alleged here in general terms, we're kind of in the converse situation of Scholastic. We don't look for any damages that might fit into copyright. We look for any, whether there's any damages that might not fit into copyright because the face of the complaint doesn't go any further than that. And it is conceivable that damages can be awarded here based on value received by him without going the further step into copyright issues. We're very early in this case. And, you know, how this will all play out on the faxes. It's been around for a while. I have, I understand your indispensable party issue, which is a typical one. You also make a 1367 issue. Yes. Why isn't that just totally irrelevant in the following way? Diversity jurisdiction, the complete diversity rule is a judgment rule. It has always been understood to have this particular parameter, exception, so to speak. Therefore, you don't get into 1367 at all as long as you stay within those parameters. Why are we getting into 1367? I think you have to get into 1367 because now the whole area of supplemental jurisdiction, which is necessary. You don't need supplemental jurisdiction to have complete diversity as complete diversity has been defined because it's been defined to allow an intervener of this kind as long as he's not an indispensable party. No, I don't think that you can read back into 1367 judge-made permissions. Because the whole complete diversity rule is a judge-made permission. If you don't read something in there, then you don't even have complete diversity. But the jurisdictional requirements of 1332 and the reference to the complete diversity rules on the face of 1367, Congress accepted the Supreme Court's invitation in Finley to codify this area of the law and not make it judge-made. So now you have 1367A, which is the general grant of supplemental jurisdiction phrased in statutory terms, which we've said does preserve some of the pre-existing limitations like the limitation on adding an indispensable party. But then there's an additional list of limitations in 1367B, and you may not invoke supplemental jurisdiction under 1367A, which is now the sole basis. The Alipata decision makes clear, for exercising additional jurisdiction, there's no more pendant or auxiliary jurisdiction. It now is supplemental jurisdiction under 1367A or it is nothing. And therefore, the limitations of 1367B limit any exercise of supplemental jurisdiction because they are written as a limitation on 1367A. 1367A says, in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims. There isn't any complete diversity in the statute. Instead, what it says, it says in any civil action of which the district courts have original jurisdiction. And they have always been understood to have original jurisdiction under these circumstances. No, because the Supreme Court made clear in Alipata when it was looking at 1366. Yes, because it was talking loosely because it wasn't talking about this particular problem. I mean, it was defining complete diversity as to have been understood, but it was always understood to have this component. It did not have the component that you could bring in non-diverse interveners without limitation. No, not without limitation, but limitation that we know about. But then the limitations on 1367B are on the face of the statute and will also apply. So even if it is authorized, because 1367A is read to include those authorizations, you then have to get into the issue of whether 1367B limits that grant. So even if they are read into A, you're still going to get into the limitations of B. Because on its face, the language of the statute does act as a limit on that. I see that I have very little time left for rebuttal. I will give you a little. I will say. All right. Thank you, Your Honor. Yes, I'm Daleson Dalley from Melvinian Myers Council for MGA. I will be speaking for 17 minutes, and my colleague, Keith Jacoby, Counsel for Carter Bryant, will take the final three minutes to speak about Mr. Bryant's view of this case. I'd like to start with the federal question issue, as I agree with the Court that it is the most straightforward way of resolving this appeal. And I hope in so doing, I can also respond to Judge Noonan's question, which is, why are they so eager to avoid being in federal court? Because they're very related. This case is a thinly disguised copyright case. As such, it belongs in federal court because federal courts are the exclusive forum to hear copyright cases. And for good reason. The federal courts have developed an intricate body of law to strike the balance in copyright cases between the powerful monopoly rights granted to copyright owners and the rights of others, like Carter Bryant, to compete and to come up with new laws. New ideas. For example, there's the idea-expression dichotomy that says, ideas are not owned. Only expression of those ideas can be protected. Or this Court's decision in the Sid and Marty Croft case that talks about the difficult analytical test that must be gone through to decide whether there is substantial similarity. That's the body of law that applies in copyright cases. Also, copyright cases decide when is something a derivative work? And how do you apportion damages in copyright cases if a work that's an issue may not be fully infringing, but just some portion of it? And what about work for hire when you're dealing with an employee and trying to decide who owns work? Those are all the bodies of, the tests under federal law for copyright. And what Mattel wants to do is avoid those tests. I guess I have two questions about that. First of all, if they had left out and used it, and they had really limited their complaint to an ownership complaint, I gather that we wouldn't have a federal question. If they had limited their complaint, which they didn't, to a pure declaration of who owns it, it wouldn't just be the end use. It would also be there couldn't be any claim for damages or any claim for the distribution of it. There might be able to be damages relating to his, the money he paid him during the time period when he wasn't really, when he was breaching their contract. Any damages that flow from the exploitation of the copyrighted work. So what's very peculiar here is that if we were to remand on their, on the ground of that they're claiming that this is what the case is really about, either they would have to stick to that or we'd be right back here later. And so it was, in a way, doesn't matter except to prolong the litigation. Well, except that what they want to try to do, I believe, is to try to get to a state court and try to throw up a lot of things, including, as they said in their reply brief, you know, evidence that he, Mr. Bryant could not have independently created BRADS. And then you'll come right back here. Perhaps. But again, it doesn't seem to be a very efficient thing to do. It's better to be here in federal court where the case belongs. Mr. Bryant already has a declaratory relief suit pending before the same judge. And their response to that, as we pointed out in our papers, is to say, well, that declaratory relief suit where he's saying that pleased a judge that I have not infringed Teen Toons, he's saying, you know, they're saying that raises all the same issues as in the state court case. Don't take that away from me. But you agree that this complaint doesn't deal with the Teen Toons problem? I. At least the conversion part of it. I agree that it doesn't, that doesn't, Teen Toons is irrelevant to our position as to whether there's federal question jurisdiction. I think, though, it clarifies, though, and shows it's the icing on the cake. Let's put it this way. There are so, in all the cases cited, Vestron, Scholastic, Topolos, all the different cases cited in the briefs, I submit that the facts of this case are far more convincing and compelling case for copyright infringement than many of those cases. Just based on the distribution point, I point out in Scholastic, at 998 of the decision, the court specifically distinguishes the Scholastic decision where, again, there the defendant said that they weren't going to use it while the ownership issue was determined, and the Vestron case where there was the use. So that just depended on the Teen Toons. He could just be using whatever it was that he wanted to use. No. The Teen Toons is just, as I say, the icing on the cake. And I submit that it wasn't an issue, as the record makes clear, that defendants put into the case. It was an issue that was put into the case. It would be very important to the district judge for some reason, though, when it seems to me not to be in a complaint at this point, even if it winds up in the complaint later. Well, I guess I disagree with Your Honor respectfully on the idea. I don't think the Teen Toons is a caterpillar situation of something that they chose not to sue on. I think what the court said, applying the Fristow case of this circuit and Ogilvy, that said that you can look at the conduct post-complaint to shed light on. The conduct is on the discovery conduct. It's not conduct about expanding the parameters of a suit yet. I mean, people, I mean, my sense of what's going on in this case is that it's a just discovery case, and both parties are being sort of loose about the discovery. But in terms of what they, it's in the complaint is where we. Again, I disagree, because in the conversion count, they say they claim that they own all intellectual property and intangible property created by Bryant during the term of the agreements and that he wrongfully converted, appropriated and used that that property created by Bryant and the claim about Teen Toons is that he didn't create it. Yes, but the question is, how did he, how did he create it? In other words, they're also saying it was his, their property. And that's the point. But, but Teen Toons, what I want to address is this, this red herring further of their idea that this is all, this is, this is only about ownership. The only, the very cases that they cite make very clear that this is not a case only about ownership. It's about use, and it's about exploitation. That takes it completely out of the cases that they cite. As Topolos, the court, this court said in the Topolos case, all copyright cases start with the fundamental threshold question of ownership. That's the first part of a copyright test, you own it, and was there copying? But whereas here, it goes beyond that to say, to get into the exclusive rights under 106, the rights to make derivative works, the rights of reproduction, the rights of distribution, the rights of display, all of which are implicated in their complaint. That transforms the nature of their complaint completely. And it prevents them from sidestepping the federal law that says that copyright laws are what's supposed to decide these issues, not state law cases. I think that the other point is that the, Mattel keeps saying, well, that they're master of their complaint. Well, they may be master of their complaint, but there's a higher authority. And that's federal law. The law is clear. You cannot, it's not your choice to make, to choose to couch what is otherwise a copyright case and couch it in terms of something that isn't a copyright case and hope that that's. It's sort of peculiar, though, because at least the two of us have a strong feeling that the state court claim could just be dismissed and we'd all go home because there is no state law cause of action of that kind. So it's very odd to be converting a non-existent state law cause of action into a federal cause of action. Yes, but first off, it's not just the conversion claim. I know that my opponent said that, well, we waived, you know, the ability to also talk about the fact that the breach of fiduciary duty and the breach of loyalty and the unjust enrichment claims are also preempted. I respectfully disagree. You know, the removal petition said federal question jurisdiction as grounds. The only thing that the district court cited was the idea that it's in her discretion as to whether to consider things that were not discussed in the removal petition. Well, we believe that that's wrong ab initio because the removal petition did discuss federal question. Beyond that, the court didn't address it. And I think that's what we've seen, reading the overall opinion, because she felt it wasn't going to make a difference, because she misapprehended Fristow and didn't realize that she could look at post-removal evidence to help clarify her view as to the nature of the complaint, she didn't feel the need to go into those cases. But it would be a very odd result to have not, for that reason, to not consider those claims which are manifestly preempted. And, again, I refer to the court to the Del Madera case, and I also refer to the court, in particular, Judge Breyer's decision in the Ferozzi case, which has a very nice discussion of the complete preemption doctrine. And it discusses preemption of conversion and also discusses preemption of unjust enrichment. There are other cases cited at page 28 of our brief. First of all, does Fristow matter at all? I mean, why isn't the complaint just good enough by itself? I think the complaint is good enough by itself. But we are dealing with a situation where the first time the judge, you know, remanded, so consequently there was a need to present more evidence the second time. I think it was a voluminous amount of, I would submit, respectfully compelling evidence. But the idea to not consider whether those other claims are preempted or not seems to be a tremendous waste of judicial resources, because there could always be a third removal, as we've discussed. And it would also lead to the result that if the claims are, in fact, Federal copyright claims, you would have an illegal result. You would have state court judges, not that there's anything wrong with being a state court judge, but you have state court judges deciding matters that are supposed to be clearly only decided by the Federal courts. And that doesn't seem to make any sense under any spectrum of the law. So, again, we believe that those claims are not waived and should be addressed. But in any case, what we're dealing with is, you know, is this case a Federal court case or is it a state court case? For all the reasons we've discussed, we believe that it's clearly a strident case for Federal question jurisdiction. We also believe that there is diversity jurisdiction here, however. Do you agree that we're only talking about 19b and not 19a? Pardon me? Do you agree that we're only talking about 19b and not 19a? Correct. I think it's important to really think about 19b, though, because 19b really wasn't designed to deal with the situation that we have here. And, in fact, there's there's no shortage of irony in this. It's totally ridiculous because they're not not present. They're present. That's exactly right. Now, it's it's Mattel chose to not name NGA originally. Now, there's no doubt that it knew about NGA. And I also point out that their claim that, oh, they didn't know it was about Bratz on the E.R. 50, I believe, is the contract between Mr. Bryan and NGA. Bratz is mentioned on the front page of the contract that they said was the big thing that they saw that made them decide to bring the lawsuit. So clearly they decided at the time they filed their complaint that they didn't want to sue or feel the need to sue NGA in order to prosecute its claims. Why did they not intervene until after the case got to federal court? NGA didn't intervene. That's right. NGA intervened when they told us that we wouldn't even be allowed to go to depositions of our former employees and that we weren't that the doors would be barred. We intervene. But they specifically struck a provision in the stipulation of intervention that said that we should be allowed in the case and have the same rights and obligations of any party. They struck that. We're in the case in this quasi-monitoring role where they asserted no claims against us. We've asserted no claims against them. And the reason is, again, going back to Judge Noonan's initial point, why didn't they sue NGA? Because any claim against NGA would touch the third rail of copyright lawsuit. Because a claim against NGA would be NGA had, took, exploited, used, misappropriated, pick any synonym in the book, I'm sure they would avoid the word copy. But that they took Mattel intellectual property, used that, and made a whole series of derivative works over the past five years, which children, including my own, have come to love and enjoy and play with as Bratz dolls. As soon as they say, NGA, you have exploited Mattel's intellectual property, they're stuck because they're admitting it's a copyright case. Did you say seven minutes or just seven minutes? Pardon me? Did you say seven minutes for your opponent? Three minutes for my opponent. Okay. How your opponent? Occasionally, that may be a frightening slip-up, Your Honor, but certainly my colleague. I just want to briefly touch on 1367 because I don't see how it's relevant at all to this appeal. 1367 is just not intended to deal with the situation here. It certainly hasn't changed the existing law of the land, which is that the post-removal intervention of a non-diverse, non-indispensable party should not destroy diversity. Certainly nothing in ExxonMobil, Subsilentio, changed that rule or anything to that effect. Now we're dealing with indispensability. I agree. If this is a copyright case, as we I think now know it is, you would think that we would be part of that case. They're still trying to fight the idea that this is, in fact, a copyright case. But I ask the Court to consider that there's no rigid rule for determining indispensability. Rather, in principles of equity and good conscience, it's a decision that's to be made. And as I understand it, it should be, it's judged by an abuse of discretion standard of the district court. You have here, and again, I think that Criswell, in this decision of this Court, is very helpful because there in Criswell, the person complaining about indispensability could have named the party that it said was indispensable and, you know, could cause all sorts of big changes in the lawsuit as a result of that person being there. But that party in Criswell, like Mattel here, despite knowing about them, despite the fact they were available, there was no bar to suing in that case, the Airline Pilots Association, chose not to. And so the Court in Criswell, similar to, I think, what was behind some of Judge Monell's reasoning, said, come on, you can't have it go both ways. And yet that's what Mattel is really seeking to do here. They sued, they chose not to. But why wouldn't that just eliminate the rule? I mean, isn't that going to be true always? No. We're talking about if they have not been named, if they were named, we wouldn't have the issue. Well, if they were, if we were named, there wouldn't be the issue about diversity. You're absolutely right. So this whole indispensable intervener issue only comes up when there's nobody, when the person hasn't been named. Well, that's right. But the difference is, in most of the cases about indispensability in this context, there's been an attempt to try to get the person named. And the whole issue in 19b is, gee, the person's. I'm talking about the intervener case, the intervener diversity case. Right. And the intervener diversity case is that it only comes up if the person has intervened. That's what's so odd about it. Right. Yes. And and then the issue is whether or not they destroy diversity. But it's always going to be the case that that person has not been originally named in the suit. Otherwise, the whole problem would never arrive. I agree with everything your Honor is saying. All I'm pointing out here is that it was Mattel's choice to not name NGA, I believe, for the purpose of trying to stay in federal state court. And that's just not just I mean, it's a cute point, but it's not just positive in any way of whether they're indispensable or not. Well, they were righteous and not naming them. Maybe they really are dispensable. It happens perhaps. But I think it's something a factor that the court can consider is the kind of judicial admission on their part as to what they were thinking. I agree that you have to look beyond that to decide whether they are or not that they are or not. I don't think it matters, ultimately, because I think it's a federal question. But I think that the court can affirm on both principles. I want to close and give my time to my colleague just to, again, refer to the Olguin case at 1472, which draw the distinction between an artful pleading and a well-pleaded complaint. I believe that this is an artfully pleaded complaint and not a well-pleaded one. And I ask respectfully that this court look through it, not just on the conversion claim, but for all the claims. Thank you. Counsel, we'll give you your three minutes. We'll give your opposing counsel an extra minute. Good afternoon, Your Honor. My name is Keith Jacoby and I represent Carter Bryant. Mr. Bryant lives in Springfield, Missouri. He's not a publicly traded company. He doesn't own any factories in Hong Kong. And the removal rules are expressly designed to protect foreign citizens like Mr. Bryant. And up until March 2005, he was not getting that protection and he wasn't getting it. Because of hearing after hearing after hearing, Mattel would say whatever it needed to say to stay out of federal court. And they're still doing it right now. The first thing that they said was that they weren't sure if this case was about Bratz at all. But today, they say that's all the case is about because MGA can't be dispensable unless it's about the rights to Bratz. On two separate occasions in front of Judge Minella, Mattel said that they weren't sure that $75,000 was at stake. And all the while, they had three law firms working on this case, 15 lawyers in two different states. Mr. Bryant knew back in Missouri that way more than way more than $75,000 was at stake. It is no mystery because Mr. Bryant, Judge Mattel, not what they said in courtrooms by what they did, that they produced scores of Bratz drawings and discovery that they had before this lawsuit was ever filed, that they were propounding hundreds of requests about his work on Bratz, not just during the five-week overlapping period, but right up until today. And they were asking him questions at depositions, which were loaded with copyright phrases like substantial similarity. Through its conduct, Mattel has shown that this case should have stayed in federal court the first time. And now all it can do is cling by its fingertips to the one theory that could get it out of federal court, which is that MGA is going to remove this case again if it went back to state court, because it is clear that what is at stake is the rights to Bratz works. It's on page 30 of their appellate brief. Suppose they were to write us a letter tomorrow and they were to say, all right, we promise that we will adjudicate only ownership interests and that our damages will be limited to damages that are appropriate for ownership interests. And if we do anything else, they can remove it again. But in the meanwhile, we are amending our complaint if it says anything else. So it's not there anymore. Well, in that sense, then they'd just be standing. What they'd be trying to get is a declaration that they can stand in the shoes of Mr. Bryant. And then MGA isn't indispensable anymore. I would suggest to you that Mattel could have chosen to just sue Carter Bryant. They could have treated this as what they purported this lawsuit to be originally. Carter Bryant. They did. But all of their theories kept coming back to MGA, so much so that now they're arguing that MGA is indispensable. If they were just seeking employment law remedies against Carter Bryant, the money that he had. Well, Carter Bryant can pay back that money. MGA isn't indispensable to that claim. MGA certainly has no fiduciary duty to Mattel. MGA is an imprivity of contract with Mattel. But in their discovery, they keep coming around to what happened to the Brats after September 2000. And what happened to them was a very small number of drawings were turned into a three-dimensional object and a three-dimensional object sold all over the world now. And it's the copying of that. It's the use of that. It's the rights to that that is at stake in this lawsuit. And Carter Bryant and MGA have a right to litigate that claim in federal court. And that's exactly what we're asking for. Thank you. And we'll add two minutes. Just a few quick points, Your Honor. First, on the waiver issue, the district court in footnote 11 of its ruling specifically held them to the waiver with respect to the notice of removal on federal question. She limited to the conversion claim and exercised her discretion not to consider the other claims. There's a second waiver, though, because the red brief does not address the fact that the district court did this and explain why it was wrong. So there is a second waiver in that one of the grounds on which the district court rested was not raised in the in the red brief as that leaves just the conversion claim. And I would point the court to footnote 12 of the reply, which raises this alternative issue, whether or not the wrong claim was picked in this regard. And although we have conceded for purposes of diversity jurisdiction and as we've indicated in our brief, that rights to Bratz are in controversy. We have not taken a specific position as to whether it's this claim or that claim. And indeed, as indicated in that footnote, have preserved the argument that they may have picked the wrong claim in that regard. We have never taken the on the issue of copying. Again, the scholastic case addresses the issue in the context where the plaintiff is trying to assert the federal claim. And there, the fact that it was just ownership and there was not even any basis factually to allege copying the court held that you would need to be able to say something about copying in order to go further. That's not the context here because we're dealing with complete preemption and their own cases like the Feruzi case and like the Breyer patch case indicate that where the gravamen of the claim sounds in contract or in breach of fiduciary duty, which is certainly the case here, that that provides the extra element. It's certainly breach of fiduciary duty goes through all. I mean, that's that's the gravamen of this case. He he was a disloyal employee and that provides the extra element. The Breyer patch case on page 307 when it talks specifically about the claims against Geisler Robidoux, there's a separate section on that, which was the company that had hired or that was above the disloyal employee. The court says with respect to the breach of fiduciary duty claims, it is clear from the above discussion that no matter how these claims are presented, they will not be preempted. And that's based on this extra element analysis. So when we're in the that's exactly the opposite of the rule that you're arguing, because it's certainly not true. However, these claims will present that they will not be preempted. There are lots of ways they could be. I'm saying no, when the gravamen of the claim is breach of fiduciary duty or breach of contract that supplies an extra element that are not rights equivalent in contract and therefore there is not complete preemption. And so under that case, even if there is an allegation that beyond ownership that they didn't just put it in a drawer, the mere fact that there is an allegation that something was done with it isn't enough in a complete preemption context to say that you can have this claim forced upon you when, in fact, the gravamen of your claim raises these extra elements and therefore brings you outside of the complete preemption. Thank you very much. Thank you. Thank you to counsel for a very well-argued and interesting case. Mattel versus Pride will be submitted.
judges: Canby, Noonan, Berzon